Mr. Chief Justice Cartter
delivered the opinion of the co art.
In the case of the United States against Charles Hamilton, the defendant was indicted for murder in a single count, but convicted of manslaughter under the doctrine that every charge of murder implies the offence of manslaughter.
The case is presented to us on the assignment of two' principal errors; first, that the court erred in charging as to the law of self-defence; second, that the court erred in charging the law governing evidence of good character. The charge was delivered extemporaneously, and at considerable length.
The court told the jury that the defendant must have been in imminent and absolute peril of his life or of some *447 great bodily harm to justify the expression of violence on his part imperiling the life of his antagonist; and if the case had involved (as, judging from the charge, the court seemed to think it did), the simple question, whether demonstrative violence on the one side with a bludgeon, or with an implement perilous to life, would justify the return of violence as a means of self-protection, the charge of the court upon that subject would have been a proper exposition of the law.
Afterwards, however, upon being requested to charge that that was not the real issue, that a justification for killing in self-defence reached further back than that, and undertook to inquire into the undeveloped purposes of the aggressor — to weigh his intentions and his capacity to carry those intentions into effect, and to say from that investigation whether the defendant had reasonable cause to apprehend danger to his life or other grave and imminent peril to his body, and not as the court had instructed that the jury must find from the testimony that the defendant was in imminent peril of his life or some great bodily harm, the court qualified its instruction. But what embarrasses us is the manner in which this qualification was made.
No doubt a lawyer could dissect from this charge a purpose in the court to declare that it was not necessary that a man should, as a matter of fact, have been in imminent peril of his life; that the aggressor should exhibit a pistol to justify the defendant in the use of his as a defence, or that only where the bludgeon was raised was he justified in striking him down, for a lawyer would have followed the court along in its charge, and worked out of it the result, which those qualifications were intended to effect.
But are laymen expected to perform the work of a lawyer? Instead of receiving a single, simple and unembarrassed affirmation of the law, are they to be left to construe the meaning of a charge susceptible, in their minds of different intendments, some of which may prove fatal to the accused.
Most of the qualifications of this charge were colloquial in character; that is to say, after the charge was delivered *448 in the colloquy which usually arises between the court and counsel, the proposition was advanced by counsel, and assented to by the court, that reasonable occasion for apprehension of danger to life or limb was all that the law demanded. Now, it may be possible that the jury thought this conversation intended for them. And it is just as possible that they thought the counsel and the court were attending to a matter which did not concern the jury. If the court had turned around to the jury in response to these suggestions of counsel, and told them that the law of the subject was that a man should be reasonably convinced that he is in imminent peril of life or of bodily harm, it would have translated the whole of that intercourse to the jury, and would have disembarrassed this charge of its objectionable features in this respect. But it is very difficult to say here whether the jury regarded this colloquy of the court both with the public prosecutor and with the counsel for the defence, as a discussion with counsel of the principles of the law in the case, or as a direct instruction to the jury.
Upon the whole, therefore, we are not able to say that the minds of the jury may not have been led astray and that they did' not adopt the original declaration of the court as the law of the case. These views have resulted in our conclusion that the case in this respect was a mistrial and that the judgment should be reversed.
We think also that the office of good character as an element in the case was misconceived by the court or for the moment lost sight of. It is the privilege of every man on trial to throw the weight of his good character into the jury box. He has a right to it, it is his property, he has earned it, and the law recognizes it as a factor in the administration of justice.
The instruction of the court upon this point must have left the jury with the impression that it is only in doubtful cases that evidence of good character may be considered. They were told that if they had reasonable doubt about the guilt of the defendant, or if they had any doubt about the guilt of the defendant (for it was put both ways) they *449 would then take into consideration the factor of good character.
But the defendant is entitled to that evidence in any event.
If. there is a reasonable doubt/ a man of bad character is entitled to an acquittal. Because he is a rascal is no reason why he should be punished for a crime which he is not proven beyond a reasonable doubt to have committed.
But the rascal is not entitled to the benefit of good character in the consideration of the question of his guilt. On the other hand the man who has earned a good character is entitled to the benefit of it when he is accused of a crime inconsistent with that character. His good character does not authorize the jury to overrule the truth or to disregard the force of other evidence. But it is an eye-glass through which they may look at all of it. If their consideration of it is to be limited only to doubtful cases — where they would be bound to acquit anyway — evidence of good character would be useless to a man at the very time when he needs it most, for he does not need it in a doubtful case.
There are cases when without evidence of good character a jury would have no reasonable doubt of a man’s guilt, but with such evidence in the case a reasonable doubt might arise sufficient to secure a verdict of acquittal, this shows that evidence of good character is an element which is to be considered and weighed with all the testimony in the case.
The judgment is reversed and a new trial granted.